ERIK J. CONRAD, ESQUIRE
I.D. No. 73054
2550 Brodhead Road
Bethlehem, Pennsylvania 18020
Office: 610-867-2900
Fax: 610-867-2922
econrad@conradattorneys.com

ATTORNEY FOR PLAINTIFF:
SUSAN E. JONES

| | |
|---|---|
| SUSAN E. JONES,<br>51 East Centre Avenue<br>Topton PA 19562<br><div align="center">Plaintiff</div><br>vs.<br><br>UNITED SERVICES AUTOMOBILE<br>ASSOCIATION a/k/a, d/b/a USAA<br>INSURANCE COMPANY,<br>9800 Fredericksburg Road<br>San Antonio TX 79288<br><div align="center">Defendant</div> | IN THE UNITED STATES DISTRICT<br>COURT FOR THE EASTERN DISTRICT<br>OF PENNSYLVANIA<br><br>CIVIL ACTION – LAW<br><br>NO.<br><br>ASSIGNED TO THE HONORABLE<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

AND NOW COMES Plaintiff, Susan E. Jones, by and through her attorney, Erik J. Conrad,

Esquire, and with him the Law Office of Thomas, Conrad and Conrad, and does hereby submit the

following Complaint, and in support thereof, avers as follows:

## THE PARTIES

1.    Plaintiff, Susan E. Jones, is an adult individual who at all times material hereto was

a resident of the Commonwealth of Pennsylvania, residing at 51 East Center Avenue, Topton,

Berks County, Pennsylvania, 19562.

2.     Defendant, United Services Automobile Association a/k/a, d/b/a USAA Insurance Company (hereinafter sometimes referred to as "USAA"), is a corporation or other business entity duly authorized to sell insurance in the Commonwealth of Pennsylvania, maintaining a principal place of business at 9800 Fredericksburg Road, San Antonio, TX, 79288.

3.     At all times material hereto Defendant USAA was in the business of selling and maintaining automobile insurance.

4.     At all times material hereto, Plaintiff Susan Jones maintained and/or was a named beneficiary under an insurance policy sold by USAA (Policy Number 003119104U71022, hereinafter "Policy", a copy of which has been attached hereto as Exhibit A).

5.     At all times material hereto, in exchange for substantial monetary premiums paid by the Plaintiff, and or her husband, Jeffrey J. Jones, USAA contractually agreed to provide various insurance benefits which included combined first party benefits totaling Two Hundred Seventy-Seven Thousand Five Hundred ($277,500.00) Dollars (See Exhibit A).

6.     At all times material hereto, Plaintiff has performed all requirements imposed upon her under the aforementioned insurance agreement.

## JURISDICTION

7.     Plaintiffs incorporate the preceding paragraphs as though the same were set forth herein at length.

8.     Jurisdiction is appropriate pursuant to 28 U.S. CODE § 1332 as the parties are citizens of two (2) different states and the amount in controversy is in excess of Seventy-Five Thousand ($75,000.00) Dollars.

## VENUE

9.      Plaintiffs incorporate the preceding paragraphs as though the same were set forth herein at length.

10.     Pursuant the USAA Insurance Agreement, the "LEGAL ACTION AGAINST US" section states:

> A.      No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until we agree in writing that the covered person, as defined in Part A, has an obligation to pay, or the amount of that obligation has been finally determined by judgment after trial.
>
> B.      No person or organization has any right under this policy to bring us into any action to determine the liability of a covered person, as defined in this policy.
>
> C.      Under Part C – Uninsured Motorist Coverage and Underinsured Motorist Coverage:
>
> > 1.      No action can be brought against us for any claim involving an uninsured motor vehicle unless the action is brought within four year from the date the covered person knows of the uninsured status of the owner of operator.
> >
> > 2.      No action can be brought against us for any claim involving an underinsured motor vehicle unless the action is brought within four years from the date on which the covered person receives a judgment from or settles with a third-party tortfeasor for less than the value of the covered person's damages.
>
> D.      Unless we agree otherwise, any legal action against us **must be brought in a court of competent jurisdiction in the county and state where the covered person lived at the time of the accident**.

(See Exhibit A, emphasis added).

11.    Under 28 U.S. CODE § 1391(d) the Defendant has sufficient contacts to subject them to the personal jurisdiction of this Honorable Court.

12.    As such, venue is proper in the United States District Court for the Eastern District of Pennsylvania based upon the Plaintiff's residency at the time of the incident.

## THE UNDERLYING INCIDENT

13.    Plaintiff incorporates the preceding paragraphs as though the same were set forth herein at length.

14.    On or about September 7, 2017 at or about 11:18 a.m., Susan Jones was traveling eastbound on Crisscross Road in Fleetwood Borough, Berks County, Pennsylvania, with the right-of-way approaching the intersection of Crisscross Road and Lenhart Road.

15.    On the above-referenced date and time, the Doug Sanders (hereinafter "Tortfeasor") was traveling westbound on Crisscross Road and had stopped at a stop sign for traffic traveling westbound on Crisscross Road at the intersection of Crisscross Road and Lenhart Road.

16.    As Mrs. Jones was entering the intersection of Crisscross Road and Lenhart Road, and attempting to continue to travel eastbound on Crisscross Road with the right of way, the Tortfeasor proceeded to pull out from the stop sign and make a left hand turn across the eastbound lane of Crisscross Road onto Lenhart Road.

17.    Tortfeasor's attempted left hand turn caused him to collide into the driver's side front of the oncoming vehicle which Mrs. Jones was driving with the clear right-of-way.

18.    The aforementioned intersection consisted of a straight and level roadway that was dry with no adverse conditions noted.

19.    The aforementioned collision was caused solely by the carelessness and negligence of the Tortfeasor and was in no part caused by any action or inaction on the part of Mrs. Jones.

20.     Tortfeasor was cited under section 3323 of the Pennsylvania Vehicle Code (Title 75) for proceeding without clearance after a stop.

21.     The collision caused devastating damage to the vehicle being driven by Mrs. Jones, requiring that said vehicle be towed from the scene.

22.     Due to the injuries sustained by Mrs. Jones, she was transported by EMS to Lehigh Valley Hospital.

23.     As a result of the aforementioned motor vehicle accident, Susan Jones suffered a cervical (C2) fracture along with anterolisthesis of C2 on C3, compression fractures at C7, T1, T2, and T3, a concussive head injury and a brain bleed.

24.     This injury was so severe that Susan Jones was required to wear a hard cervical collar for more than one hundred forty (140) days.

## THE INSURANCE POLICY

25.     The Plaintiff incorporates the preceding paragraphs as though the same were set forth herein at length.

26.     As previously stated, Plaintiff Susan Jones maintained and/or was a named beneficiary under an insurance policy sold by USAA (Policy Number 003119104U71022) which included combined first party benefits totaling Two Hundred Seventy-Seven Thousand Five Hundred ($277,500.00) Dollars (See Exhibit A).

Under the Policy, "Covered person" is defined as:

1.     You or any family member;

2.     Any other person while:

    a.     Occupying your covered auto; or

      b.      Not occupying a motor vehicle if injured as a result of an accident in Pennsylvania involving your covered auto;

      3.      A non-occupant who has no other source of First Party Benefits, injured by any vehicle insured for liability under this policy for which you are not required to maintain First Party Benefits. Only the minimum Medical Expense Benefit required by Pennsylvania law will be provided.

(See Exhibit A).

27.      "Medical Expense Benefit" is defined as:

[t]he reasonable fees for necessary medical treatment and rehabilitative service, all without limitation as to time, provided that they are incurred within 18 months from the date of the accident causing the BI. However, if within 18 months from the date of the accident it can be determined with reasonable medical probability that further expenses may be incurred after this period, the 18-month time limit will not apply to the payments of these additional medical expenses.

(See Exhibit A).

28.      "Motor Vehicle" is defined as:

[a] self-propelled vehicle operated or designed for use upon public roads. However, "motor vehicle" does not include a vehicle operated:

      1.      By muscular power;

      2.      On rails or tracks; or

      3.      Solely by electric power obtained from overhead trolley wires but not operated upon rails.

(See Exhibit A).

29.      "Necessary medical treatment and rehabilitative services" is defined as:

      1.      Treatment, accommodations, products or services which are determined to be necessary by a licensed heath care provider, unless they are determined to be unnecessary by a State-approved Peer Review Organization (PRO) and

      2.      Nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing.

(See Exhibit A).

    30.    "Peer Review Organization (PRO)" is defined as:

      1.      An organization with which the Federal Health Care Financing Administration or the Commonwealth contracts for medical review of Medicare or medical assistance services; or

      2.      Any health care review company, approved by the commissioner, that engages in peer review for the purpose of determining that medical and rehabilitation services are medically necessary and economically provided.

(See Exhibit A).

    31.    The USAA Insurance Policy states:

We will pay the following benefits, in accordance with the Pennsylvania Motor Vehicle Financial Responsibility law:

    A.    First Party Benefits.

      1.      We will pay the Medical Expense Benefit to or for a covered person who sustains BI caused by an accident arising out of the use of a motor vehicle.

      2.      We will pay the following additional benefits if shown on the Declarations:

        a.    Work Loss Benefit.

        b.    Funeral Expense Benefit.

        c.    Accidental Death Benefit.

    B.    Combined Benefits.

      1.      If Combined Benefits is shown on the Declarations, we will pay, subject to the limits of liability described in this Part, the following First Person Benefits to or for a covered person who sustains BI caused by an

accident arising out of the maintenance or use of a motor vehicle:

    a.    Medical Expense Benefit.

    b.    Work Loss Benefit.

    c.    Funeral Expense Benefit.

    d.    Accidental Death Benefit.

    2.    We will pay Combined Benefits only for expenses or loss incurred within three years from the date of the accident.

(See Exhibit A).

32.    Additionally, "Covered Person" is defended as:

    1.    You or any family member while occupying any auto or miscellaneous vehicle.

    2.    Any other person while occupying your covered auto.

    3.    You or any family member while not occupying a motor vehicle if injured by:

        a.    A motor vehicle designed for use mainly on public roads;

        b.    A miscellaneous vehicle; or

        c.    A trailer.

(See Exhibit A).

33.    "Medical payment fee" is defined as:

[a]n amount as determined by us or someone on our behalf, that we will pay for charges made by a licensed hospital, licensed physician, or other licensed medical provider for medically necessary and appropriate medical services. The amount that we will pay will be one of the following:

1.      The amount provided by an applicable agreement with a Preferred Provider Organization, Preferred Provider Network, or other similar agreement; or

2.      The amount required, approved, or allowed by a fee schedule established by a state, federal, or other governmental entity in the relevant geographic area; or

3.      The amount negotiated with the provider; or

4.      The lessor of the following:

   a.      The actual amount billed; or

   b.      A reasonable fee for the service provided.

(See Exhibit A).

34.      "Medically necessary and appropriate medical services" are:

[t]hose services or supplies provided or prescribed by a licensed hospital, licensed physician, or other licensed medical provider that, as determined by us or someone on our behalf, are required to identify or treat BI caused by an auto accident and sustained by a covered person and that are:

1.      Consistent with the symptoms, diagnosis, and treatment of the covered person's injury and appropriately documented in the covered person's medical records;

2.      Provided in accordance with recognized standards of care for the covered person's injury at the time the charge is incurred;

3.      Consistent with published practice guidelines and technology, and assessment standards of national organizations or multi-disciplinary medical groups;

4.      Not primarily for the convenience of the covered person, his or her physician, hospital, or other health care provider;

5.      The most appropriate supply or level of service that can be safely provided to the covered person; and

6.      Not excessive in terms of scope, duration, or intensity of care needed to provide safe, adequate, and appropriate diagnosis and treatment.

However, "medically necessary and appropriate medical services" do not include the following:

1. Nutritional supplements or over-the-counter drugs;

2. Experimental services or supplies, which means services or supplies that we determine have not been accepted by the majority of the relevant medical specialty as safe and effective for treatment of the condition for which its use is proposed; or

3. Inpatient services or supplies provided to the covered person when these could safely have been provided to the covered person as an outpatient.

(See Exhibit A).

35. The Insuring Agreement provided as follows:

A. We will pay only the medical payment fee for medically necessary and appropriate medical services and the reasonable expense for funeral services. These fees and expenses must:

1. Result from BI sustained by a covered person in an auto accident; and

2. Be incurred for services rendered within 18 months from the date of the auto accident.

B. We or someone on our behalf will review, by audit or otherwise, claims for benefits under this coverage to determine if the charges are medical payment fees for medically necessary and appropriate medical services or reasonable expenses for funeral services. A provider of medical or funeral services may charge more than the amount we determine to be medical payment fees and reasonable expenses, but such additional charges are not covered.

C. We will not be liable for pending or subsequent benefits if a covered person or assignee of benefits under Medical Payment Coverage unreasonably refuses to submit to an examination as required in Part E – General Provisions, Duties after an Accident or Loss.

(See Exhibit A).

## TREATMENT

36.    The Plaintiff incorporates the preceding paragraphs as though the same were set forth herein at length.

37.    Following the removal of the hard cervical collar, Susan began a course of physical therapy at Good Shepherd Physical Therapy – Kutztown, located at Weis Plaza, 15260 Kutztown Road, Suite 170, Kutztown, Berks County, Pennsylvania, 19530.

38.    Susan would attend three (3) sessions a week, each lasting at a minimum, thirty (30) minutes each.

39.    Additionally, Susan would continue in her therapeutic recovery by performing the exercises, recommended by her physical therapist, to the best of her ability.

40.    When Susan Jones was first evaluated by her physical therapist, measurements of her cervical range of motion (hereinafter "ROM") were severely limited on all planes. [1]

41.    Susan was evaluated using active range of motion (hereinafter "AROM") and passive range of motion (hereinafter "PROM"). [2]

42.    Susan's AROM right rotation measurement was fourteen (14) degrees and her left rotation was eighteen (18) degrees.

43.    Additionally, Susan's PROM cervical flexion was twenty (20) degrees and her extension was twenty-eight (28) degrees.

---

[1] A person has three (3) different planes of motion. The sagittal, dividing the body into left and right quadrants. The frontal, dividing the body into front, (anterior or ventral) and back (posterior or dorsal) quadrants. The transverse dividing the body into upper and lower quadrants.

[2] With an AROM the patient performs the movement and with a PROM either the therapist or a therapeutic machine performs the movement.

44.     Susan was also found to be extremely tight throughout her neck and trapezoid region.

45.     On November 27, 2019, Susan's clinical assessment found that she continued to have pain, limited ROM, paresthesia, [3] and difficulty performing activities of daily living (hereinafter "ADLs").

46.     On December 31, 2018, after nearly one year of therapy (approximately ninety-six (96) sessions) Susan was still found to be suffering trapezoid and scapulae pain.

47.     Further, Susan continued to have tenderness and knots in her cervical paraspinals and upper and middle trapezoid as well as her levator scapulae and sternocleidomastoid muscles.

48.     Susan also continued to have moderate to overwhelming pain, significant limitations in her cervical ROM, and continued difficulty with her ADLs.

49.     On or about February 4, 2019, Susan continued to have muscle spasms and guarding [4] throughout her cervical region, especially in her upper trapezoid.

50.     Susan further continued to suffer from pain, paresthesia, limited cervical ROM, and difficulty performing ADLs.

51.     On or about April 23, 2019, Susan was re-evaluated. [5]

52.     Susan was found to have a cervical flexion of thirty-four (34) degrees, a cervical extension of forty-eight (48) degrees, a left rotation of twenty-two (22) degrees, and a right rotation of eighteen (18) degrees. [6]

---

[3] Paresthesia is an abnormal sensation of tingling or pricking ("pins and needles") caused by damage to the peripheral nerves.
[4] Guarding is the involuntary reaction to protect an area of pain.
[5] This was NOT Mrs. Jones' first evaluation.  She was routinely re-evaluated every month throughout her treatment.
[6] This represents an improvement of fourteen (14) degrees, twenty (20) degrees, four (4) degrees, and four (40) degrees respectively.

53.     Further, Susan was found to have a neck disability index of fifty-two out of one hundred (52/100) [7] and a FOTO [8] score of forty-four out of one hundred (44/100).

## PEER REVIEW EVALUATION

55.     While Mrs. Jones' treatment was progressing, her insurer, USAA, determined to submit her bills for peer review as permitted under Title 31 of the Pennsylvania Code section 69.51 et al.[9]

56.     Disability Management Consultants, LLC, the PRO used by USAA, issued a report dated August 13, 2019 (a copy of said Report has been attached hereto as Exhibit B).

57.     In said report, the evaluator states:

> Based on the objective findings documented in the initial physical therapy evaluation on 1-25-18, a course of supervised physical therapy would be considered reasonable and necessary. The initial plan of care was consistent with usual and customary physical therapy practice. Based on the severity of the spinal fractures and prolonged immobilization in a cervical collar, one would not expect a quick resolution of the decreased functional abilities, range of motion and strength. The claimant was re-evaluated in a timely manner (monthly) during the 15 months of documented physical therapy. As expected, progress was extremely slow and setbacks did occur. After a thorough analysis of monthly re-evaluations, it would appear that after 12-31-18, it does not appear that any substantial, sustained improvement in function, strength or range of motion occurred in the patient's overall status. Continuing with skilled physical therapy would not be considered reasonable. When the patient's progress as plateaued, it is reasonable to discharge the patient with a well-structured home program consisting of pain

---

[7] The neck disability index is determined by answering several questions regarding the ability to perform certain tasks on a scale ranging from zero (0) being the best result to five (5) being the worst result. A score of 52/100 would indicate severe neck disability.

[8] The Focus On Therapeutic Outcomes score indicates that Mrs. Jones continued to exhibit moderate difficulty performing usual work and household activities, including bending, stooping, climbing one flight of stairs, lifting overhead, and standing for an hour.

[9] A provider's bill shall be referred to a PRO only when circumstances or conditions relating to medical and rehabilitative services provided cause a prudent person, familiar with PRO procedures, standards and practices, to believe it necessary that a PRO determine the reasonableness and necessity of care, the appropriateness of the setting where the care is rendered, and the appropriateness of the delivery of the care. An insurer shall notify a provider, in writing, when referring bills for PRO review at the time of the referral. 30 Pa, Code § 69.52(a). It is unclear what would have triggered the need for PRO determination, yet Defendant USAA submitted this matter all the same.

control techniques and exercise.  It is the patient's responsibility to
routinely exercise to maintain the gains made with treatment.

(See Exhibit B).

58.    The following conclusion was then reached:

Based on the documentation reviewed, physical therapy at Good
Shepherd Rehab would appear to be reasonable from 1-25-18
through 12-31-19 for 90 sessions.  Although this is a high number
of reasonable sessions, the re-evaluations support this amount of
skilled physical therapy services provided.  Maximum benefit of
supervised physical therapy was achieved on 12-31-18.

(See Exhibit B).

59.    The PRO acknowledges that Mrs. Jones suffered severe injuries.

60.    The PRO acknowledges that Mrs. Jones as receiving the therapy for her injuries
that were both reasonable and necessary.

61.    The PRO acknowledges that therapy to treat Mrs. Jones would take a very long
time and would suffer setbacks.

62.    The PRO acknowledges that Mrs. Jones was being re-evaluated monthly to
document her progress.

63.    The PRO acknowledges that Mrs. Jones was progressing with her therapy.

64.    The PRO then decides that treatment after December 31, 2018, would not be
considered reasonable.

65.    The PRO determines that Mrs. Jones has plateaued and that it would be reasonable
to discharge the patient with a well-structured home program.

66.    The PRO reaches these conclusions based on the PRO's opinion that Mrs. Jones
did not appear to have **"substantial, sustained improvement'**.

67.     The PRO therefore determines that Mrs. Jones has "plateaued" because Susan did not progress along the PRO's artificial timeline to a degree more acceptable to the PRO.

68.     It is not the statutory function of the PRO to substitute its medical opinions for that of a patient's treating physicians.

69.     Nor does the PRO get to decide if a patient is taking too long to recover or not recovering substantially enough.

70.     Mrs. Jones, her physical therapist, the neurosurgical association that treated her after her injury, and her current treating neurosurgeon, all found that continued supervised physical therapy help Mrs. Jones with her pain and muscle spasms, continued to help her improve her ROM, helped her improve with her ability to perform ADLs, helped to keep her from losing the precious recovery already achieved, and to help her ongoing symptomology and increase her standard of living.

71.     Pursuant to the Motor Vehicle Financial Responsibility Law ("MVFRL") First Party medical benefits are to be paid by the insurer for all reasonable and necessary medical treatment and services.

72.     However, the MVFRL does not define what is reasonable and necessary.

73.     The Pennsylvania Courts have found much treatment reasonable and necessary, including treatment designed only to manage symptoms rather than to improve the underlying condition (Cruz v. WACB, 428 A.2d 413, Pa. Cmnwlth. 1999); palliative treatment to treat symptomology such as pain (Trafalgar House & St. Paul Fire & Marine Insurance v. WCAB, 784 A.2d 232, Pa. Cmnwlth. 2001).

74.     Every evaluation of Mrs. Jones indicated that she continues to medically benefit from ongoing supervised physical therapy.

75.     Further, the PRO concluded that the types of therapy being received by Mrs. Jones was appropriate to treat her injuries.

76.     Yet, PRO came to the conclusion that Mrs. Jones was no longer showing sustained, substantial improvements, and therefore ongoing beneficial treatment was not reasonable and necessary.

## DISABILITY MANAGEMENT CONSULTANTS, LLC

77.     Plaintiff incorporates the preceding paragraphs as though the same were set forth herein at length.

78.     As previously stated, Defendant USAA used Disability Management Consultants, LLC (hereinafter "DMC"), to conduct the "peer review" on Mrs. Jones' treatment.

79.     This is not the first time that USAA has used DMC to obtain negative peer reviews in order to deny first party medical coverage.

80.     It is believed and therefore averred that DMC performs a substantial number of peer reviews for Defendant USAA.

81.     It is believed and therefore averred that DMC regularly provides Defendant USAA with peer review reports that are unfavorable to USAA's customers.

82.     It is believed and therefore averred that DMC possesses a substantial financial interest in providing Defendant USAA with biased reviews.

83.     It is believed and therefore averred that DMC has been, or may have been, providing negative reports to Defendant USAA to maintain a steady source of business.

## DEFENDANT USAA

84.    Plaintiff incorporates the preceding paragraphs as though the same were set forth herein at length.

85.    It is believed and therefore averred that Defendant USAA utilizes and maintains a business model which refuses to pay medical coverage for their customers who select and pay for high levels of first party medical coverage.

86.    It is believed and therefore averred that Defendant USAA chose medical opinion through the peer review process to subvert their obligations under their insurance agreement and to minimize USAA's potential exposure.

87.    It is believed that the peer review was not rendered independently but rather focused on generating a false and misleading report for the sole and specific purpose of saving USAA money all at the expense of Mrs. Jones.

88.    It is believed and therefore averred that all of the preceding demonstrates a clear and convincing pattern of abuse of the peer review process by Defendant USAA to swindle their clients out of high premiums without having to pay for the services which they have contracted to supply.

## COUNT I
### SUSAN E. JONES vs. USAA INSURANCE COMPANY
### BREACH OF CONTRACT

89.    Plaintiff incorporates the preceding paragraphs as though the same were set forth herein at length.

90.     Susan Jones was a named beneficiary under an automobile insurance policy maintained with USAA.

91.     The policy was owned by her husband Jeffrey J. Jones (USAA Policy Number 00B119104U71022).

92.     Under said policy, in exchange for monies paid as premiums, Defendant USAA agreed to numerous contractual obligations.

93.     One of those contractual obligations was providing first party medical benefits for treatment that arose from a vehicle related claim.

94.     Further, the Jones paid a significantly higher premium for both exceptional medical coverage but also for a combination of first party benefits totaling Two Hundred Seventy-Seven Thousand Five Hundred ($277,500.00) Dollars.

95.     The Jones paid said premiums and have met every obligation they had under the insurance agreement.

96.     **NONE OF THIS IS DISPUTED**.

97.     Mrs. Jones was in a motor vehicle accident on September 7, 2017.

98.     In that accident, Mrs. Jones was severely injured.

99.     The first party benefits that were paid for by Mr. and Mrs. Jones were now due and owing by Defendant USAA.

100.    Defendant USAA breached this contract as follows:

      a.      By submitting Mrs. Jones' medical bills for peer review when nothing would have indicated to a reasonably prudent person familiar with peer review procedures that review would be needed to determine the reasonableness and necessity of her treatment;

      b.      By accepting payment from Mrs. Jones and denying first party benefits due and owing;

     c.     By denying coverage based on the objective conclusion that Mrs. Jones was not showing "substantial, sustained improvement;"

     d.     By denying benefits due and owing under the agreement based on a peer review report that came to unsupported conclusions that are not supported by the record;

     e.     By undertaking a course of action which is designed to unilaterally and without justification, refuse to honor the claim of their client, Susan Jones, for benefits that were due and owing;

     f.     By causing their client, Susan Jones, to become personally responsible for medical bills arising out of an undisputed claim under the aforementioned insurance policy;

     g.     By failing to reasonably and timely pay first party benefits that were due and owing under the agreement;

101.    As a direct and proximate result of the aforesaid, Mrs. Jones failed to receive contractually mandated benefits for which she has already paid and are due and owing, all to her great detriment and loss.

102.    As a direct and proximate result of the aforesaid, Mrs. Jones failed to receive statutorily mandated benefits for which she has already paid and are due and owing, all to her great detriment and loss.

103.    As a direct and proximate result of the aforesaid, Mrs. Jones has failed to receive much needed medical treatment, all to her great detriment and loss.

104.    As a direct and proximate result of the aforesaid, Mrs. Jones has failed to receive the full value of the benefits for which she has already paid and are due and owing, all to her great detriment and loss.

105.    As a direct and proximate result of the aforesaid, Mrs. Jones has suffered a significant setback to her recovery from the severe injuries suffered in the underlying automobile collision, all to her great detriment and loss.

106.    As a direct and proximate result of the aforesaid, Mrs. Jones as incurred medical expenses and costs for contractual benefits that were due and owing, all to her great detriment and loss.

107.    As a direct and proximate result of the aforesaid, Mrs. Jones has needlessly and without cause been forced to suffer emotional injury, including stress, difficulty sleeping, panic attacks, and depression over her condition, all to her great detriment and loss.

108.    As a direct and proximate result of the aforesaid, Mrs. Jones has been required to retain the services of an attorney to seek payment for medical bills, due and owing under the aforestated agreement, and said fees will continue to be incurred into the future, and is therefore pursuant to section 1716 of the Pennsylvania Motor Vehicle Financial Responsibility Law, entitled to attorney fees in the event that it is found that the insurer has acted in an unreasonable manner.

109.    Additionally, pursuant to section 1716 of the Pennsylvania Motor Vehicle Financial Responsibility Law, Defendant would further be obligated to pay twelve (12%) percent annum interest on all overdue benefits.

110.    Lastly, pursuant to section 1798 of the Pennsylvania Motor Vehicle Financial Responsibility Law, if the Defendant is found to have acted with no reasonable foundation, Mrs. Jones would also be entitled to reasonable attorney fees.

WHEREFORE, Plaintiff, Susan E. Jones, demands judgment in her favor and against the Defendant for payment of medical bills, with interest at a rate of twelve (12%) percent, penalties

as provided by statue and reasonable and actual attorney fees, costs, and other such relief as this Honorable Court may deem appropriate.

## COUNT II
### SUSAN E. JONES VS. USAA INSURANCE COMPANY
### CLAIM FOR FIRST PARTY BENEFITS PURSUANT TO 75 PA.C.S. § 1716

111.    Plaintiff incorporates the preceding paragraphs as though the same were set forth herein at length.

112.    Under 75 Pa.C.S. § 1716, benefits are overdue if not paid within thirty (30) days after the insurer receives reasonable proof of the amount of benefits.

113.    Defendant USAA has received reasonable proof of the amount of benefits and has failed to pay the benefits within thirty (30) days as required under 75 Pa.C.S. § 1716.

114.    Further, 75 Pa.C.S. § 1716 states that overdue benefits shall bear interest at a rate of twelve (12%) percent per annum from the date the benefits become overdue.

115.    In the event it is found that Defendant USAA has acted in an unreasonable manner in refusing to pay for benefits due and owing, Defendant USAA is also responsible for the payment of reasonable attorney fees.

116.    Mrs. Jones has met all of her obligations under the insurance agreement.

117.    Defendant USAA has acted in an unreasonable manner in denying benefits due and owing based on an unsupported and biased peer review report.

118.    As such, Mrs. Jones is entitled to all the relief provided under 75 Pa.C.S. § 1716.

WHEREFORE, Plaintiff, Susan E. Jones, demands judgment in her favor and against Defendant USAA for the payment of medical bills, with an interest rate of twelve (12%) percent

per annum, attorney fees, costs, all penalties as provided by statute, and any other relief this Honorable Court deems appropriate.

**COUNT III**
**SUSAN E. JONES VS. USAA INSURANCE COMPANY**
**CLAIM FOR FIRST PARTY BENEFITS PURSUANT TO 75 PA.C.S. § 1797(b)**

119.    Plaintiff incorporates the preceding paragraphs as though the same were set forth herein at length.

120.     Pursuant to 75 Pa.C.S. § 1797(b), if it is determined that the medical treatment or rehabilitative services were medically necessary, Defendant USAA must pay the outstanding provider bills, twelve (12%) percent interest, costs, and all attorney fees.

121.    Mrs. Jones has met all of her obligations under the insurance agreement.

122.    Defendant USAA's denial of benefits due and owing was unreasonable.

123.    All medical and rehabilitative services received by Mrs. Jones were medically necessary and appropriate.

124.    As such, Mrs. Jones is entitled to all the relief provided under 75 Pa.C.S. § 1797(b).

WHEREFORE, Plaintiff, Susan E. Jones, demands judgment in her favor and against Defendant USAA for the payment of medical bills, with an interest rate of twelve (12%) percent per annum, attorney fees, costs, all penalties as provided by statute, and any other relief this Honorable Court deems appropriate.

**COUNT IV**
**SUSAN E. JONES vs. USAA INSURANCE COMPANY**
**BREACH OF CONTRACTUAL DUTY OF GOOD FAITH AND FAIR DEALING**

125.    Plaintiff incorporates the preceding paragraphs as though the same were set forth herein at length.

126.    Under the USAA Insurance Policy, Defendant USAA has a contractual duty to operate in good faith and fair dealings.

127.    Defendant USAA has beached this contractual duty as follows:

    a.    By refusing to timely pay benefits due and owing under the insurance agreement;

    b.    By unreasonably engaging in an adversarial relationship with its insured;

    c.    By forcing its insured to incur substantial counsel fees and costs in order to obtain benefits that were paid for and are due and owing;

    d.    By forcing its insured to suffer duress and other psychic injuries, when it knew, or should have known, that its actions would cause such psychic injury;

    e.    By submitting this matter to peer review when nothing in the file would have indicated to a reasonably prudent person familiar with such proceedings that review was needed to determine reasonableness or necessity;

    f.    By using unreasonable reasoning to deny benefits due and owing to their insured;

    g.    By subjecting their insured to harassment, inconvenience, and embarrassment by unreasonable refusing to provide the contracted benefits;

    h.    By engaging in a business model that would submit their insured to a bias peer review in order to limit the Defendants monetary exposure for contracted benefits;

    i.    By engaging in a business model which put the Defendant's financial interest before the health and well-being of their insured fiduciaries;

    j.    By engaging in a pattern of deliberate indifference to the rights of their insured fiduciaries;

    k.    By engaging in a pattern of deceptive business practices to deny their insured fiduciaries the benefits for which they had contracted;

l.      By recklessly disregarding the rights of their insured and without just cause denying benefits which were paid for and were due and owing;

128.    As a direct and proximate result of the aforesaid, Mrs. Jones failed to receive contractually mandated benefits for which she has already paid and are due and owing, all to her great detriment and loss.

129.    As a direct and proximate result of the aforesaid, Mrs. Jones failed to receive statutorily mandated benefits for which she has already paid and are due and owing, all to her great detriment and loss.

130.    As a direct and proximate result of the aforesaid, Mrs. Jones has failed to receive much needed medical treatment, all to her great detriment and loss.

131.    As a direct and proximate result of the aforesaid, Mrs. Jones has failed to receive the full value of the benefits for which she has already paid and are due and owing, all to her great detriment and loss.

132.    As a direct and proximate result of the aforesaid, Mrs. Jones has suffered a significant setback to her recovery from the severe injuries suffered in the underlying automobile collision, all to her great detriment and loss.

133.    As a direct and proximate result of the aforesaid, Mrs. Jones as incurred medical expenses and costs for contractual benefits that were due and owing, all to her great detriment and loss.

134.    As a direct and proximate result of the aforesaid, Mrs. Jones has needlessly and without cause been forced to suffer emotional injury, including stress, difficulty sleeping, panic attacks, and depression over her condition, all to her great detriment and loss.

WHEREFORE, Plaintiff, Susan E. Jones, demands judgment in her favor and against Defendant USAA, for compensatory, consequential, and punitive damages, plus interest, costs, and attorney fees in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars.

## COUNT V
## SUSAN E. JONES vs. USAA INSURANCE COMPANY
## <u>BAD FAITH</u>

135.    Plaintiff incorporates the preceding paragraphs as though the same were set forth herein at length.

136.    It is believed and therefore averred that Defendant USAA has employed the peer review organization Disability Management Consultants ("DMC") in bad faith.

137.    DMC does substantial peer review work for Defendant USAA and therefore, has a financial interest in providing Defendant a biased peer review report.

138.    Further, DMC has, or may have been, routinely providing Defendant USAA, and other insurance companies, with biased reports for the benefit of maintaining a steady source of business.

139.    This practice presents a clear pattern of abuse of the peer review process, all to the detriment of all who pay monies for services, like Susan Jones.

140.    Defendant USAA, through its representatives, agents, and/or employees, breached its duty to its insured to act in good faith as follows:

    a.    Refusing to pay Plaintiff, Susan E. Jones' claim without conducting a reasonable investigation based on all available information;

    b.    Failing to pay Plaintiff's claims within a reasonable time;

    c.    Not attempting in good faith to effectuate, prompt, fair and equitable coverage of claims once the Defendant's

responsibility under its policy of insurance had become clear;

d.    Failing to evaluate and determine Plaintiff's entitlement to benefits based on the terms of the policy that was entered into, thus forcing Plaintiff to initiate litigation to recover benefits due and owing under the insurance policy;

e.    Failing to pay Susan Jones' accident related medical expenses;

f.    Failing to properly notify their insured, Susan Jones, of Defendant's intention to seek peer review when it knew, or should have known, of Mrs. Jones' ongoing medical condition and treatment;

g.    Failing to notify the provider [10] whose treatment was under review that a peer review had been requested, in violation of 31 Pa. Code § 69.52(a);

h.    Failing to notify the provider whose treatment was under review that the provider had the right and opportunity to submit additional records and documentation supporting the provider's treatment, in violation of 31 Pa. Code § 69.52(c);

i.    Failing to notify the provider that it had an opportunity to discuss the case with the reviewer, in violation of 31 Pa. Code § 69.52(c); and

j.    Failing to notify their insured, Susan Jones, that she had an opportunity to discuss the case with the reviewer, in violation of 31 Pa. Code § 69.52(j).

141.    As a direct and proximate result of the aforesaid, Mrs. Jones failed to receive contractually mandated benefits for which she has already paid and are due and owing, all to her great detriment and loss.

---

[10] Correspondence to Good Shepherd Rehabilitation Hospital is addressed to Kristen Sykora, PT. Unfortunately, Kristen Sykora is not a physical therapist, she is a Certified Registered Nurse Practitioner ("CRNP"). Further, Kristen Sykora, CRNP does not work for Good Shepherd, she works for Lehigh Valley Physicians Group Neurosurgery. As such, actual and proper notice was never provided either to Mrs. Jones or to her treaters. Additionally, the records that USAA and DMC requested were the physical therapy records of Kristen Sykora, which, as explained above, do not, and never have, existed.

142.    As a direct and proximate result of the aforesaid, Mrs. Jones failed to receive statutorily mandated benefits for which she has already paid and are due and owing, all to her great detriment and loss.

143.    As a direct and proximate result of the aforesaid, Mrs. Jones has failed to receive much needed medical treatment, all to her great detriment and loss.

144.    As a direct and proximate result of the aforesaid, Mrs. Jones has failed to receive the full value of the benefits for which she has already paid and are due and owing, all to her great detriment and loss.

145.    As a direct and proximate result of the aforesaid, Mrs. Jones has suffered a significant setback to her recovery from the severe injuries suffered in the underlying automobile collision, all to her great detriment and loss.

146.    As a direct and proximate result of the aforesaid, Mrs. Jones as incurred medical expenses and costs for contractual benefits that were due and owing, all to her great detriment and loss.

147.    As a direct and proximate result of the aforesaid, Mrs. Jones has needlessly and without cause been forced to suffer emotional injury, including stress, difficulty sleeping, panic attacks, and depression over her condition, all to her great detriment and loss.

WHEREFORE, Plaintiff, Susan E. Jones, demands judgment in her favor and against Defendant USAA, for compensatory, consequential, and punitive damages, plus interest, costs, and attorney fees in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars.

## COUNT VI
## SUSAN E. JONES vs. USAA INSURANCE COMPANY
## UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT

148.    Plaintiff incorporates the preceding paragraphs as though the same were set forth herein at length.

149.    The actions Defendant USAA, as previously set forth, violate the mandates of the Pennsylvania Unfair Trade Practices and Consumer Protection Act (hereinafter "The UTPCPA"), 73 Pa. C.S.A. §201-1 et seq.

150.    Said actions include:

    a.    Failing to objectively and fairly evaluate Mrs. Jones' claim;

    b.    Representing to Mrs. Jones that they had contracted to provide Two Hundred Seventy-Seven Thousand Five Hundred ($277,500.00) Dollars of medical benefits, only to unjustifiably seek any means not to provide said contracted benefits;

    c.    Seeking peer review without any reasonable basis in fact;

    d.    Undermining other legal remedies that may be available to Mrs. Jones;

    e.    Unreasonably withholding benefits, due and owing under the agreement;

    f.    Unjustly denying to pay Mrs. Jones the Two Hundred Seventy-Seven Thousand Five Hundred ($277,500.00) Dollars in first party medical benefits, paid for by the Plaintiff, and due and owing by the Defendant; and

    g.    Defendant USAA has committed unfair and deceptive business practices prohibited by the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 P.S. § 201-1 et seq.) and thus Plaintiff is entitled to all remedies available thereunder.

151.    As a direct and proximate result of the aforesaid, Mrs. Jones failed to receive contractually mandated benefits for which she has already paid and are due and owing, all to her great detriment and loss.

152.    As a direct and proximate result of the aforesaid, Mrs. Jones failed to receive statutorily mandated benefits for which she has already paid and are due and owing, all to her great detriment and loss.

153.    As a direct and proximate result of the aforesaid, Mrs. Jones has failed to receive much needed medical treatment, all to her great detriment and loss.

154.    As a direct and proximate result of the aforesaid, Mrs. Jones has failed to receive the full value of the benefits for which she has already paid and are due and owing, all to her great detriment and loss.

155.    As a direct and proximate result of the aforesaid, Mrs. Jones has suffered a significant setback to her recovery from the severe injuries suffered in the underlying automobile collision, all to her great detriment and loss.

156.    As a direct and proximate result of the aforesaid, Mrs. Jones as incurred medical expenses and costs for contractual benefits that were due and owing, all to her great detriment and loss.

157.    As a direct and proximate result of the aforesaid, Mrs. Jones has needlessly and without cause been forced to suffer emotional injury, including stress, difficulty sleeping, panic attacks, and depression over her condition, all to her great detriment and loss.

WHEREFORE, Plaintiff, Susan E. Jones, demands judgment in her favor and against Defendant USAA, for compensatory, consequential, and punitive damages, plus interest, costs,

treble damages, and attorney fees in an amount in excess of Seventy-Five Thousand ($75,000.00)

Dollars.

Respectfully submitted,

THOMAS, CONRAD and CONRAD

By:

Erik J. Conrad, Esquire
Pennsylvania Attorney Number 72054
Attorney for Plaintiff
Susan E. Jones

2550 Brodhead Road
Bethlehem, PA 18020
610-867-2900
econrad@conradattorneys.com
tcc@conradattorneys.com

## VERIFICATION

The undersigned, having read the attached pleading, verify that the within pleading is based on information furnished to counsel, as well as information gathered by counsel in the course of this lawsuit.  The language of the pleading is that of counsel and not of the signer.  Signer verify that she has read the within pleading and that is true and correct to the best of the signer's knowledge, information and belief.  To the extent that the content of the pleading is that of counsel, I have relied upon counsel in making this Verification.  This Verification is made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsifications to authorities.

Dated: __12/17/19_____          _____
                                                  SUSAN E. JONES